UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:08-CV-1155-LJM-TAB |
| | ) | |
| TOWN OF PLAINFIELD, INDIANA, | ) | |
| POLICE OFFICER JASON WILSON, | ) | |
| in his individual capacity; and | ) | |
| TOWN OF PLAINFIELD, INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED AND REVISED MOTION FOR EXTENSION
OF TIME IN WHICH TO SERVE PROCESS**

Plaintiff Michael Ross ("Ross"), by counsel, and pursuant to Federal Rules of Civil Procedure 4(m) and 6(b)(1)(B), as well as this Court's August 17, 2009 Entry,[1] submit this Amended and Revised Motion for Extension of Time in Which to Serve Process. To support this Amended and Revised Motion, Ross states as follows:

**I.  Revision Of Basis For Motion And Clarification**

Upon discovering that proof of service had not yet been filed with the Court, and following a hasty review of the file in an effort to quickly remedy the failure, Ross, by undersigned counsel, represented that he would show "good cause" for the Motion, based upon "good faith efforts" to serve process. **(Dkt. 11.)** However, following an exhaustive review of the file, including conversion and review of the digital file from prior counsel, the undersigned has not been able to confirm that there was an attempt to serve process on the defendants and, thus, revises and clarifies the previously-asserted basis for the Motion for Extension of Time.

---

[1] The Court's August 17, 2009 Entry was forwarded to undersigned by electronic transmission on August 18, 2009, and thus this response is due September 1, 2009.

The file materials do not establish, for example, that a draft conveyance letter enclosing a courtesy copy of the Complaint and Summons, prepared by Ross's prior counsel to the insurance adjuster, was ever sent. Moreover, although initial review of the attorney file revealed that only one of the three summonses were returned by the Court, suggesting that the other summonses were served, the remaining two original summonses have since been found. Finally, no conveyance letters were found, either in hard-copy or digital form, for the service of the Complaint and Summonses to the named defendants. Therefore, the undersigned revises the basis for the Motion for Extension of Time, which is not made for "good cause" due to "good faith efforts" to serve process, and apologizes to the Court for the inadvertent misrepresentation in the earlier filing. **(See Dkt. 11.)** Instead, Ross now requests relief pursuant to the "mercy" tier of remedies available under Rule 4(m)—where an extension of time in which to serve may be granted at the discretion of the Court without good cause—as well as under Rule 6(b)(1)(B)— where extensions of specific time limits may be granted for a showing of "excusable neglect."

## II.  Introduction

The present action presents a fundamental violation of federal civil rights brought pursuant to 42 U.S.C. § 1983 and is precisely the type of matter contemplated by Boucher v. Potter, 2005 WL 118348 at *3 (S.D. Ind. 2005), and its progeny, where a dismissal would not only cause Ross substantial irreversible harm, but also ill-serve the interests of justice and contradict the express intent of Congress. Therefore, in its discretion, this Court should allow Ross a reasonable extension of time to effectuate service of process pursuant to Rule 4(m).

In analogous non-Section 1983 cases involving important federal issues, courts have also recognized the importance of granting discretion under Rule 4(m). Even in cases presenting issues far less significant than those at bar, courts have granted Rule 4(m) discretion to promote

the orderly and efficient administration of justice and still preserve such claims due to the critical importance of protecting plaintiffs' right to their day in court. His day in court is all that Ross is seeking.

### III.  Brief Statement Of Facts

On August 29, 2006, following a traffic stop which took place quite literally in his own driveway, Ross was handcuffed (allegedly for officer safety) and directed to sit on the ground. Ross explained to the Town of Plainfield Police Officer Jason Wilson (the "Officer"), that he had recently suffered a knee injury and was physically unable to sit where and how the Officer had requested. After walking Ross away from his vehicle, the Officer "hip-tossed" Ross over the Officer's side and slammed Ross into the ground with great force. With his hands cuffed behind his back, Ross could not protect himself or brace for the impact and, as a result, injured his left shoulder, elbow, and knee. Though he repeatedly requested medical assistance from the Officer, and from the other Town of Plainfield police officers who subsequently arrived on scene, Ross's pleas for help were ignored. Ross was ultimately ticketed for an expired license, which was not the reason he was originally pulled over, and nothing else.

In September of 2006, Ross filed a complaint with the Town of Plainfield Police Department. In October of 2006, Ross also met with the undersigned—then an associate of William O. Harrington, PC of Danville, Indiana (the "Firm"). Later that month, Ross hired the Firm to represent him in this action.

On February 12, 2007, Ross timely sent his Tort Claim Notice to Plainfield Town Manager Rich Carlucci, pursuant to Indiana Code Section 34-13-3-8. The Firm also maintained contact with the Town's insurance carrier, including its representatives Jacob Beck and Tarri

Seldomridge, regarding the claim, from shortly after the delivery of the Tort Claim Notice to early 2008.

On August 28, 2008, Ross filed a Complaint against the Town of Plainfield and the Officer, alleging Section 1983 violations. The Complaint and Summonses were filed one day before the statute of limitations ran,[2] via certified mail by Attorney William O. Harrington ("Harrington"), the owner of the Firm. In the normal course of operations at the Firm, as had occurred myriad times before, service would have been made pursuant to the Federal Rules of Civil Procedure. However, in August of 2008, the Firm was in a state of flux, having just recently lost two key administrative employees and being forced to hire and train replacement staff. The Firm was also in the process of severing ties with the undersigned. Indeed, at the time, there was confusion between the undersigned and the Firm concerning the continued representation of Ross and the prosecution of this case. In the end, after the undersigned opened his new practice on September 27, 2008, it was determined that this action would transfer to the new firm with the undersigned as lead counsel. Through no fault on the part of Ross, the undersigned was unaware that there had been no attempt at service or that service under the Federal Rules had not been perfected.[3]

The undersigned first realized that there was a potential problem with service of process upon receiving the Court's Rule 41(e) dismissal or show cause order. **(Dkt. 10.)** Upon discovering that there was no confirmation of service in the file, the undersigned immediately

---

[2] The two-year Statute of Limitations for Ross's Section 1983 claims ran on August 29, 2008.

[3] Unrelated to the instant matter, but no less important to help explain Ross's lack of attention to service of process, on or about February 11, 2009, Ross was arrested in Hendricks County on a warrant stemming from charges of theft filed in late January of 2009. From February 11, 2009 to July of 2009, the undersigned worked diligently, and was ultimately able, to convince the Hendricks County Prosecutor that the charges against Ross should be dismissed for lack of an evidentiary foundation. (State v. Ross, 32D05-0901-FB-1).

prepared his initial Motion for Extension of Time **(Dkt. 11)** and, further, served copies of the Complaint and Summons on the Town of Plainfield, via the office of the Town Manager, with a certified mail return receipt showing service was achieved on August 6, 2009, two hundred and twenty days past the original Rule 4(m) deadline.  The undersigned repeated service upon the defendants on August 31, 2009 by (1) hand-delivering a copy to the Town of Plainfield via its Town Manager Rich Carlucci, 206 W. Main St., Plainfield, IN  46168, care of an office administrator duly authorized in the normal course of business to receive mail and documents on his behalf, pursuant to Rule 5(b)(2)(B)(i); and (2) hand-delivering a copy to Jason Wilson, in person, at his residence at 5984 Porchester Pl., Plainfield, IN  46168, pursuant to Rule 5(b)(2)(A).  Upon receiving service of the Complaint and Summons from the undersigned on August 31, 2009, the Officer remarked that he "had heard about the lawsuit right after it was filed" and that he "thought there had been a full investigation." (See Notice of Service, Affidavit of Service) (Ross has separately and concurrently filed Notice of Service.)

### IV.  Discussion And Analysis

**A.     This Court Should Permit An Extension Of Time To Serve Process On The Defendants Because Cases Should Be Heard On Their Merits, And Civil Rights Cases—Especially Section 1983 Cases—Are Particularly Ripe Ground For The Exercise Of Discretion Not To Dismiss.**

It is both fundamental to, and axiomatic in, the American system of jurisprudence that there is a strong judicial preference for deciding cases on their merits and for giving litigants their day in court.  See, e.g., Commissioner of Internal Revenue v. Wilson, 90 F.2d 788, 790 (7th Cir. 1937).  Many cases have recognized the strong policy favoring deciding cases on the merits. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that, in deciding whether to grant further leave to amend under Federal Rule of Civil Procedure 15, the factor with the greatest weight is the strong policy under the Federal Rules favoring judgments on the merits); see also

5

Rual Trade Ltd. v. Viva Trade LLC, 549 F. Supp.2d 1067, 1071 (E.D.Wis. 2008) (citing 55 MOORE'S FEDERAL PRACTICE-CIVIL § 55.31[2]).[4]

Moreover, the courts have long held that civil rights cases, above all others, hold a special place in the justice system. The fundamental nature of the rights that civil rights litigants are attempting to redress have prompted the courts, both state and federal, to give deference to the strong public interest of allowing civil rights litigation to achieve adjudication on the merits, whenever possible, instead of cutting litigation off for procedural issues. In a pro se litigant case involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Second Circuit observed, in its opening remarks:

> In those matters near the border of dismissal for one or another deficiency, however, courts must be careful, especially in civil rights cases, not to dismiss a case too hastily on procedural grounds. Although a case should win only on its merits, it should not be lost on account of an ostensible procedural bar.

Minnette v. Time Warner, 997 F.2d 1023, 1025 (2d Cir. 1993).

Finally, chief in the hierarchy of civil rights cases are those based upon 42 U.S.C. § 1983, which (while conferring no substantive constitutional right) provides the primary vehicle for the enforcement of rights based upon the federal constitution and federal statutes, such as those

---

[4] This judicial preference for decisions on the merits is not unique to the federal courts, and has a long tradition in the Indiana State Courts as well. There is a "marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations." See Sportsman's Paradise, Inc. v. Sports Ctr, Inc., 424 N.E.2d 1073, 1075-1076 (Ind. Ct. App. 1981) (internal citations omitted); see also Shane v. Home Depot USA, Inc., 869 N.E.2d 1232, 1234 (Ind. Ct. App. 2007) ("We initially observe that default judgments are not favored in Indiana."); Millenium Club, Inc. v. Avila, 809 N.E.2d 906, 910 (Ind. Ct. App. 2004) ("The Court of Appeals views motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits."); and Allstate Ins. Co. v. Watson, 747 N.E.2d 545, 547 (Ind. 2001) ("Although the decision to grant or deny a motion to set aside a default judgment falls within the trial court's discretion, that discretion must be exercised in light of the strong public policy in Indiana that favors deciding cases on their merits.")

brought to bar by Ross.  See Albright v. Oliver, 510 U.S. 266 (1994).  Approximately 120 years ago, the United States Supreme Court recognized that, of the types of cases brought to bar via Section 1983, the very nature of claims like Ross's seek to protect rights above which "[n]o right is held more sacred, or is more carefully guarded . . . than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."  Union Pac. Ry. Co. v. Botsford, 141 U.S. 250, 251 (1891).  "Among the historic liberties" protected by the Due Process Clause is the right against "unjustified intrusions on personal security" at the hands of the state.  Ingraham v. Wright, 430 U.S. 651, 673 (1977); see also Youngberg v. Romeo, 457 U.S. 307 (1982)).

In fact, there is a strong public interest in encouraging victims of even relatively minor civil rights violations to bring suit.  "The cumulative effect of petty violations of the Constitution arising out of the interactions between the police (and other public officers) and the citizenry on the values protected by the Constitution may not be petty. . . . "  Hyde v. Small, 123 F.3d 583, 585 (7th Cir. 1997) (reversing and remanding a district court's ruling that had denied the plaintiffs $16,000.00 in attorney fees following a successful, albeit small, jury verdict).

In light of these cases and the strong policy favoring adjudication of cases on the merits, Ross requests that the Court exercise its discretion under Federal Rule of Civil Procedure 4(m) and allow an extension of time to serve process on the Defendants.  Such an extension would permit Ross's Section 1983 claims to be considered on their merits.

**B.     The Court Should Grant Ross's Motion For Extension Of Time Because The Relevant Factors Associated With Rule 4(m), On Balance, Weigh In Ross's Favor, Warranting Such Extension.**

This Court should permit Ross an extension of time to serve process on Defendants pursuant to the discretion afforded it under Federal Rule of Civil Procedure 4(m). That Rule, which requires service of process to be effected upon the defendant within 120 days after the filing of the plaintiff's complaint, empowers the Court, in its discretion, to extend the time allowed for service of process even if the plaintiff is unable to show good cause.[5] See id.; see also Panaras v. Liquid Carbonic Indus. Corp., 94 F.3d 338, 340 (7th Cir. 1996) ("If . . . good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time.") (citations omitted); Oliver v. Cassidy Restaurant, Inc., 2000 WL 1568650, 1 (S.D. Ind. 2000).

In determining if a discretionary extension of time should be granted, courts consider various factors, including whether the statute of limitations has expired on the plaintiff's claims. Cooper v. Pepsi-Cola General Bottlers, 2007 WL 2413018, *8-9 (N.D. Ind. 2007). The advisory committee's note to Rule 4(m) suggests that a discretionary extension of the time may be appropriate if, as in this case, the applicable statute of limitations would bar a later filed action.[6]

---

[5] Federal Rule of Civil Procedure 4 provides, in pertinent part, as follows:
>    **(m) Time Limit for Service.** If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. ***But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.***

Id. (emphasis added).

[6] Advisory Committee Note to 1993 Amendments to Rule 4(m) provides:
>    This subdivision retains much of the language of the present subdivision (j).
>    The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this

See Fed. R. Civ. P. 4(m), advisory committee's note (1993 amendments); see also Panaras, 94 F.3d at 341 (noting that the running of the applicable statute of limitations merits close examination, even though it does not mandate an extension of time).

Other factors that weigh in the discretionary extension calculus include whether: (1) the defendant has suffered any prejudice by a delay, other than the inherent prejudice in having to defend the suit; (2) the defendant received actual notice; and (3) any attempts at service were made. See Troxell v. Fedders of N. Am., Inc., 160 F.3d 381, 382 (7th Cir. 1998); Lopez v. Donaldson, 292 B.R. 570, 575-76 (E.D. Mich. 2003); Thompson v. Chertoff, 2006 WL 2949538, at *2 (N.D. Ind. 2006).

### 1. *Expiration of the Statute of Limitations*

Here, the "balance of factors" weigh in favor of granting Ross a discretionary extension of time. *Humphrise,* 2004 WL 1630512, at *3. First, and perhaps most compelling, is the fact that the applicable two-year statute of limitations period has run, barring the refiling of Ross's Section 1983 complaint. This factor alone weighs heavily in support of granting an extension of time. See, e.g., Humphrise v. Cracker Barrel Restaurant No. 221, 2004 WL 1630512, at *3 (N.D. Ill. 2004) ("The Seventh Circuit has stressed that an expired statute of limitations weighs heavily in support of an extension of time....") (citing *Panaras,* 94 F.3d at 341).

In Roberson v. Arrow Trucking Co., 2001 WL 484468 (S.D. Ind. 2001), the plaintiff was injured in an accident in August of 1998. He filed a state court claim on August 22, 2000, just shy of the statute of limitations, and the matter was removed to the federal court a month later on

---

subdivision even if there is no good cause shown. Such relief formerly was afforded in some cases, partly in reliance on Rule 6(b). Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. E.g., Ditkof v. Owens-Illinois, Inc., 114 F.R.D. 104 (E.D. Mich. 1987).

9

September 20, 2000, setting the deadline for service at January 18, 2001. An individual defendant moved for dismissal for insufficient service of process, which the plaintiff had attempted to achieve by filing a "Praecipe for Summons" with the Indiana Secretary of State, as an agent of the individual. Looking to the Advisory Committee Notes about extensions being appropriate if applicable statutes of limitations would bar a later filed action, and noting that Roberson's action would be precluded from being refiled, the Court granted Roberson forty-five (45) days from March 9, 2001, or a total of 95 days past the Rule 4(m) service deadline by which to achieve service. Id.

Like the plaintiff in Roberson, in the present case, Ross's constitutional claims would die an abrupt death were the Court to decline to exercise its discretion to extend the service deadline and salvage the case. Accordingly, and because the statute of limitations has expired, this Court should grant the Motion for Extension of Time. See, e.g., Cardenas v. Benter Farms, 2000 WL 1693807, *2 (S.D. Ind. 2000) (allowing a thirty-day extension of time to serve process where the statute of limitations had run such that even a dismissal without prejudice would bar plaintiffs claims).

Further, only in cases where the underlying statute of limitations has run does Rule 4(m) mete out the draconian punishment of dismissal with prejudice, when all that is authorized by the rule is dismissal without prejudice. The unfairness of this result is even more distinct when one considers the disparate treatment afforded by different states' statute of limitations periods. If Ross had filed his claims in Wisconsin, another Seventh Circuit jurisdiction, he could have suffered a Rule 4(m) dismissal without prejudice and still timely filed and served his case. This disparate treatment, by virtue of the Court's application of state statutes of limitation to 42

U.S.C. § 1983 (which has no statute of limitations), provides further rationale for the Court to grant an extension in this case.

Moreover, and by analogy, even the caselaw involving Rule 41(e), dismissal based upon a failure to prosecute, clearly hold that "dismissal is an overly harsh remedy" and should only be used as a "last resort." Minnette, 997 F.2d at 1027 ("We have repeatedly emphasized that dismissal is a harsh remedy to be utilized only in extreme situations.") (internal quotations omitted); see also Nita v. Conn. Dep't of Envt'l. Prot., 16 F.3d 482, 485 (2d Cir. 1994); Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 109 (2d Cir. 1992); Tamini v. M/V Jewon, 808 F.2d 978, 980 (2d Cir. 1987).

As an additional basis to grant Ross's Motion, it is important to note that, if an extension is not permitted and a dismissal is ordered, Ross will suffer by the fault of his counsel. In Oliver, 2000 WL 1568650, the plaintiff filed her complaint alleging violations of the Americans with Disabilities Act on December 29, 1999. Almost six months later, the Court requested the plaintiff to show cause why her case should not be dismissed for failure to serve defendant pursuant to Rule 4(m). The plaintiff caused service to be made mere days later, approximately 141 days after the filing of the Complaint. Though the plaintiff's counsel pointed to office turnover and other factors in an effort to show good cause for the failure, the Court found that there was no good cause. However, in looking to exercise the discretion afforded the Courts by 4(m), and extend her service deadline to the date service was actually achieved, the Court noted, "In the end, if dismissal is ordered, [the plaintiff] will suffer by the fault of her counsel, and she has no control over her counsel's difficulty in completing service of process. There is no hint that [the plaintiff] did anything to delay the service of process, nor is there anything to indicate that she has benefitted from this delay." Id. at *2. The same analysis holds true here.

### *2. No Prejudice To Defendants: Actual Notice*

Second, it is extremely doubtful that Defendants, who have been aware of Ross's claim and this action, have suffered any harm as a result of being served with process after the time allotted for service of process by Rule 4(m) had expired. While Defendants did not receive process notice until August 6, 2009, when service was eventually made, they have had actual notice of the identity of Ross and the nature of his claims and injuries since within days of the injury (by virtue Plaintiff's citizen's complaint to the police department). *See Humphrise,* 2004 WL 1630512, at *3 (noting that the defendant "does not dispute that it received actual notice of the lawsuit, and its actions in seeking dismissal indicate its awareness"). Officer Wilson remarked, as he received actual service of the Complaint and Summons, that he "had heard about the lawsuit right after it was filed" and that he "thought there had been a full investigation." (Notice of Service, Affidavit of Service). The Defendants have also had actual notice of Ross's counsel's name and contact information within six months of the incident (via the February 12, 2007 Tort Claim Notice). Defendants even had the opportunity to contact their insurance carrier (with whom the undersigned communicated and negotiated through early 2008) and have that carrier provide an adjuster to begin to investigate and prepare a defense. Under these circumstances, the Defendants will suffer no prejudice if an extension of time to procure service is granted.

### *3. Defendants Received Actual Service*

Not only was there actual notice of the potential suit, and its exact nature and basis, albeit prior to the suit being filed, but service was eventually made upon Defendants and more than twenty days have elapsed without a responsive pleading, despite the fact that either the Court or the Defendants would be required to move for dismissal pursuant to Rule 4(m) prior to that

happenstance. In a ruling to uphold the district court's exercise of discretion to not extend a deadline (due to the difficult burden, on appeal, of abuse of discretion), the Court of Appeals nonetheless pointed out:

> Where … the defendant does not show any actual harm to its ability to defend the suit as a consequence of the delay in service, where indeed it is quite likely that the defendant received actual notice of the suit within a short time after the attempted service, and where moreover dismissal without prejudice has the effect of dismissal with prejudice because the statute of limitations has run since the filing of the suit … most district judges probably would exercise lenity and allow a late service, deeming the plaintiff's failure to make timely service excusable by virtue of the balance of hardships.

<u>Coleman v. Milwaukee Board of School Directors</u>, 290 F.3d 932, 934 (7th Cir. 2002).

Armed with this analysis, Ross asks this Court to grant him an extension of time to serve process and to allow his claims to be decided on the merits. <u>See, e.g.</u>, <u>Cardenas</u>, 2000 WL 1693807 (granting an extension of time even though service was not achieved two years and ninety-five days (i.e., 825 days) after the complaint was filed).

### **C.** **Pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), applied on its own or in conjunction with Rule 4(m), this Court should exercise its discretion to extend Ross's time in which to serve process.**

Lastly, Ross seeks relief from this Court under Federal Rule of Civil Procedure 6(b)'s provision for excusable neglect. Rule 6(b) provides, "When an act may or must be done within a specific time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In a recent Northern District of Indiana case, the Court observed:

> The United States Supreme Court held that the analysis of what constitutes "excusable neglect" is an equitable consideration, which should account for the circumstances surrounding the belated filing, including "the danger of prejudice to the [defendant], the length of the delay and its potential impact on the judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted within good faith."

13

Stodola v. Finley & Co., Inc., 2008 WL 506050 *1 (N.D. Ind. 2008) (citations omitted).

While in 1997 the Seventh Circuit opined, "there is not a 'hard and fast' rule in this circuit which bars a trial judge from exercising discretion to determine whether attorney negligence in missing a filing deadline may be deemed 'excusable neglect.'" (Robb, 122 F.3d at 361), it has more recently held:

> In Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 395 (1993), the Supreme Court broadly defined 'excusable neglect.' We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules." Raymond [v. Ameritech Corp.], 442 F.3d at 606 (parallel citations omitted). "A finding of excusable neglect 'is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer,' but extends to some cases in which the delay is 'caused by inadvertence, mistake, or carelessness.' " Lewis v. School Dist. # 70, 523 F.3d 730, 740 (7th Cir. 2008) (citation omitted) (quoting Pioneer, 507 U.S. at 391). Also, this determination is "an equitable one, taking account of all relevant circumstances surrounding the party's omission. The factors to consider include the danger of prejudice, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant had acted in good faith. *Id.* (quotations and citation omitted).

HMBI, Inc. v. Schwartz, 2008 WL 2600150 *1, (N.D. Ind. 2008.) (In a case in which, despite party carelessness or mistake, the Court granted an extension of a specific time limit).

In the instant case, excusable neglect exists. The delay in securing service of process resulted from inadvertence or mistake. In particular, the undersigned believed that service had been made on Defendants, the same way that it would have been in all previous cases that he had handled in the Firm, without incident. The undersigned had no reason to doubt service of process until he received the Rule to Show Cause. Compounding this inadvertence and mistake are the facts that the Firm was in a state of flux and had lost key administrative employees and, further, that confusion surrounded which counsel would maintain Ross as a client and prosecute this case. As a result, Ross urges the Court to grant relief under Rule 6(b).

## V.  Conclusion

Ross, by counsel, respectfully requests the Court to grant him an extension of time, pursuant to Federal Rules of Civil Procedure 4(m) and/or Rule 6(b)(1)(B), to achieve service on the Town of Plainfield and Defendant Officer Wilson, up to and including the date of its Order.

615 Russell Ave.                                           SCOTT C. QUICK, LLC
Indianapolis, IN  46225
(317) 822.3707
(317) 822.3708 (fax)
(317) 910.2748 (cell)                                      By_____x/ Scott C. Quick_____
quicklawoffice@gmail.com                                        Scott C. Quick  #17510-49
                                                                Attorney for Plaintiff Michael Ross

15